\IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 20-cv-03531-PAB-TPO

MCLAUGHLIN GROUP, INC., a South Carolina Corporation, and
VAC-TRON EQUIPMENT, LLC, a Delaware limited liability company

      Plaintiffs,

v.

AMERICAN MANUFACTURING & MACHINE, INC., a Florida corporation,

      Defendant.

---

# ORDER

---

This matter comes before the Court on Plaintiffs' Renewed Motion for Default Judgment [Docket No. 162] and defendant American Manufacturing & Machine, Inc.'s Motion to Dismiss Due to Egregious Deception by the Plaintiffs [Docket No. 167]. American Manufacturing & Machine, Inc. ("AMM"), purportedly appears through two staff members of AMM, filed a response to the motion for default judgment. Docket No. 163.[1] Plaintiffs McLaughlin Group, Inc. ("McLaughlin") and Vac-Tron Equipment, LLC ("Vac-Tron") filed a reply to the motion for default judgment. Docket No. 165. Plaintiffs filed a response to AMM's motion to dismiss, Docket No. 168, and AMM filed an

---

[1] The Court will not consider this response because a corporate entity may not appear pro se in federal court. *See* Docket No. 166 at 1-2.

unsigned reply.  Docket No. 169.[2]  The Court has jurisdiction pursuant to 28 U.S.C.
§ 1332.

## I. BACKGROUND

This case has a lengthy procedural history.  The Court recounted the key
portions of that history in its August 16, 2024 order.  *See* Docket No. 161 at 1-2.  The
Court will repeat that history here along with the subsequent developments in the case.
Plaintiffs initiated this case by filing a complaint on November 30, 2020.  Docket No. 1.
They filed an amended complaint on December 22, 2020.  Docket No. 17.  The
amended complaint asserts one claim against defendant American Manufacturing &
Machine, Inc., namely, breach of a member interest purchase agreement ("MIPA").  *Id.*
at 3, 18-22, ¶¶ 11, 70-86.  On January 29, 2021, attorney Daniel F. Warden appeared
on behalf of AMM and filed an answer and counterclaim. Docket No. 46.

On July 31, 2023, Mr. Warden filed a motion to withdraw as counsel for AMM.
Docket No. 147.  On August 18, 2023, then-Magistrate Judge Kato S. Crews granted
Mr. Warden's motion.  Docket No. 149.  Judge Crews' order stated that, "because
Defendant is a corporation, Defendant may not appear without counsel admitted to the
bar of this Court, and that absent prompt appearance of substitute counsel, pleadings
and papers may be stricken, and default judgment or other sanctions may be imposed
against Defendant."  *Id.*  No attorney has since filed an appearance on behalf of AMM.

Plaintiffs asked the Court to enter default judgment against AMM pursuant to
Federal Rules of Civil Procedure 16 and 37.  Docket No. 156 at 5, ¶ 17.  The Court
found that default judgment was an appropriate sanction for AMM's failure to obtain

---

[2] The Court will not consider this reply because a corporate entity may not
appear pro se in federal court.  *See* Docket No. 166 at 1-2.

counsel in violation of a Court order, Docket No. 161 at 8, but denied the motion for default judgment because the plaintiffs failed to argue that they were entitled to default judgment based on the facts alleged in the complaint.  *Id.* at 8-9.  Plaintiffs subsequently filed a renewed motion for default judgment.  Docket No. 162.

## II.  LEGAL STANDARD

### A.  <u>Sanctions</u>

Federal Rule of Civil Procedure 16 permits a court to issue "any just orders" if a party "fails to obey a scheduling or other pretrial order."  Fed. R. Civ. P. 16(f)(1)(C).  Available sanctions include "rendering a default judgment against the disobedient party."  Fed. R. Civ. P. 37(b)(2)(A)(vi); *see also Klein v. Harper*, 777 F.3d 1144, 1147 (10th Cir. 2015) (holding that "courts have broad inherent power to sanction misconduct and abuse of the judicial process, which includes the power to enter a default judgment") (quotation and citations omitted).  When corporations violate orders requiring them to obtain counsel, "[d]istrict courts in this Circuit have entered default judgment as a sanction against non-represented corporate defendants."  *Baxter Constr. Co., LLC v. SF Constr., Inc.,* No. 22-cv-01117-NYW-KLM, 2023 WL 5822502, at *3 (D. Colo. Sept. 8, 2023) (citations omitted).  "But before entering default judgment as a sanction, the Court must consider the *Ehrenhaus* factors to determine whether default judgment is a justified and appropriate sanction."  *Id.* (citing *Ehrenhaus v. Reynolds*, 965 F.2d 916, 921 (10th Cir. 1992)).  The *Ehrenhaus* factors are: (1) the degree of actual prejudice to the opposing party, (2) the amount of interference with the judicial process, (3) the culpability of the litigant, (4) whether the court warned the party in advance that dismissal of the action would be a likely sanction for noncompliance, and (5) the efficacy of lesser sanctions.  *Ehrenhaus*, 965 F.2d at 921.

3

### B. Default Judgment

The decision to enter default judgment is "committed to the district court's sound discretion." *Olcott v. Del. Flood Co.*, 327 F.3d 1115, 1124 (10th Cir. 2003) (citation omitted). In exercising that discretion, the Court considers that "[s]trong policies favor resolution of disputes on their merits." *In re Rains*, 946 F.2d 731, 732 (10th Cir. 1991) (quotation and citations omitted). "The default judgment must normally be viewed as available only when the adversary process has been halted because of an essentially unresponsive party." *Id.* It serves to protect a plaintiff against "interminable delay and continued uncertainty as to his rights." *Id.* at 733.

A party may not simply sit out the litigation without consequence. *See Cessna Fin. Corp. v. Bielenberg Masonry Contracting, Inc.*, 715 F.2d 1442, 1444-45 (10th Cir. 1983) ("[A] workable system of justice requires that litigants not be free to appear at their pleasure. We therefore must hold parties and their attorneys to a reasonably high standard of diligence in observing the courts' rules of procedure. The threat of judgment by default serves as an incentive to meet this standard.") (citation omitted). One such consequence is that, upon the entry of default against a defendant, the well-pleaded allegations in the complaint are deemed admitted. *See* 10A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2688.1 (4th ed., 2023 rev.). "Even after default, however, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." *Id.* A court need not accept conclusory allegations. *Moffett v. Halliburton Energy Servs., Inc.,* 291 F.3d 1227, 1232 (10th Cir. 2002). Although "[s]pecific facts are not necessary" in order to state a claim, *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Bell Atl. Corp. v. Twombly*, 550

4

U.S. 544, 555 (2007)), the well-pleaded facts must "permit the court to infer more than the mere possibility of misconduct."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quotations and alterations omitted).  Thus, even though modern rules of pleading are somewhat forgiving, "a complaint still must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory."  *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008) (citation omitted).

## III. ANALYSIS

### A.  Default Judgment as a Sanction

The Court, in its order issued on August 16, 2024, found that all five *Ehrenhaus* factors weighed in favor of sanctioning AMM for failure to comply with a court order. Docket No. 161 at 4-8.  Specifically, the Court found that "default judgment is a warranted and appropriate sanction for AMM's failure to obtain counsel in violation of Judge Crews' August 18, 2023 order."  *Id.* at 8.  The Court finds that no intervening events have impacted the analysis of its previous order and that default judgment is still an appropriate sanction for the same reasons that the Court previously explained.

### B.  Merits of Default Judgment

A party seeking default judgment must "provide legal arguments as to why it is entitled to default judgment."  *United States v. Noell*, No. 22-cv-02538-PAB-SBP, 2023 WL 4204669, at *5 n.2 (D. Colo. Jun. 27, 2023).  In their renewed motion for default judgment, plaintiffs argue that their breach of contract claim against AMM is governed by Delaware law and that plaintiffs have sufficiently alleged each of the elements of the claim.  Docket No. 162 at 7-8, ¶¶ 21-24.

The Court must first determine which state's law governs this dispute. "A federal court sitting in diversity . . . must apply the substantive law of the forum state, including its choice of law rules." *Vitkus v. Beatrice Co.*, 127 F.3d 936, 941 (10th Cir. 1997). Here, the law of the forum state – Colorado – generally recognizes as valid a contract's choice of law. *See Nat'l Mortg. Corp. v. Greenwich Cap. Fin. Prods., Inc.*, 53 F. App'x 510, 512 (10th Cir. 2002) (unpublished) (citing *Hansen v. GAB Bus. Servs., Inc.*, 876 P.2d 112, 113 (Colo. App. 1994)). In the contract at issue in this case, the parties agreed that Delaware law would govern the agreement. Docket No. 17-1 at 53. The Court therefore finds that Delaware law governs this dispute.

### 1. Elements

Under Delaware law, a breach of contract claim has three elements: "first, the existence of the contract, whether express or implied; second, the breach of an obligation imposed by that contract; and third, the resultant damage to the plaintiff." *VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. 2003). The Court finds that the first amended complaint sufficiently alleges each of these three elements. First, the complaint alleges the existence of a valid contract between the parties in the form of the MIPA to sell the ownership interest in a company. Docket No. 17 at 5-6, 18, ¶¶ 23, 71. Second, the complaint alleges that AMM breached several provisions of the contract, such as failing to disclose transaction fees owed to third-party advisors, failing to maintain the confidentiality of the MIPA, failing to notify the plaintiffs of any legal claims made by a non-party to the MIPA, and failing to indemnify the plaintiffs for such a claim. *See, e.g.*, *id.* at 6-10, 12-13, 18, ¶¶ 28-33, 42-45, 72. Third, the complaint alleges that plaintiffs suffered damages as a result of these breaches. *Id.* at 20-21, ¶¶ 80-86.

## 2. Damages

Default judgment requires the Court to ascertain the amount of damages. *See Reg'l Dist. Council v. Mile High Rodbusters, Inc.,* 82 F. Supp. 3d 1235, 1243 (D. Colo. 2015) (citing *Herzfeld v. Parker*, 100 F.R.D. 770, 773 (D. Colo. 1984)). The court must hold a hearing on the damages claimed before entering default judgment unless "the amount claimed is a liquidated sum or one capable of mathematical calculation." *Hunt v. Inter-Globe Energy, Inc.*, 770 F.2d 145, 148 (10th Cir. 1985). "Actual proof must support any default judgment for money damages where there is an uncertainty as to the amount." *Mile High Rodbusters, Inc.,* 82 F. Supp. 3d at 1243 (citing *Klapprott v. United States*, 335 U.S. 601, 611-12 (1949)). "While the Court accepts the well-pleaded facts of the complaint as true on a motion for default judgment, allegations relating to the amount of damages are generally not accepted as true." *First Home Bank v. USA Pro Roofing & Constr., LLC*, No. 18-cv-00965-MSK-STV, 2018 WL 6990394, at *3 (D. Colo. Oct. 19, 2018); *see also United States v. Craighead*, 176 F. App'x 922, 925 (10th Cir. 2006) (unpublished). "In making an independent determination of the amount of damages, the court may rely on detailed affidavits or documentary evidence." *BMO Harris Bank N.A. v. Marjanovic*, No. 19-cv-02945-CMA-KMT, 2021 WL 307501, at *4 (D. Colo. Jan. 29, 2021) (citations and quotation omitted).

Before reaching the damages calculation, the Court finds it helpful to discuss the allegations out of which this case arises because that discussion will illuminate plaintiffs' basis for the damages sought.[3]

---

[3] The following allegations from the first amended complaint are accepted as true for the purposes of ruling on the motion for default judgment. *See Jones v. Marquis Props., LLC*, 212 F. Supp. 3d 1010, 1015 (D. Colo. 2016) (citations omitted).

Before November 9, 2018, plaintiff Vac-Tron LLC was owned by defendants AMM, Vac-Tron Holdings, and several other parties ("the former owners"). Docket No. 17 at 3, ¶ 12. In November 2016, the former owners engaged Lumos Partners, L.L.C. ("Lumos") to facilitate the sale of Vac-*Tron* LLC. *Id.* at 4, ¶ 14. Lumos's engagement agreement entitled Lumos to a transaction fee, paid by Vac-Tron LLC, upon the sale of Vac-Tron LLC. *Id.*, ¶ 18. After initial sales efforts, the former owners asked Lumos to pause efforts to sell Vac-Tron LLC. *Id.* at 5, ¶ 21. Vac-Tron LLC continued to market itself for sale, using materials prepared by Lumos, but without informing Lumos of these efforts. *Id.*, ¶ 22.

On November 9, 2018, Vac-Tron LLC signed an agreement, known as the member interest purchase agreement ("MIPA"), in which McLaughlin acquired the entirety of the membership interests in Vac-Tron LLC from the former owners. *Id.* at 5-6, ¶ 23. The former owners did not tell McLaughlin about the engagement agreement involving Vac-Tron LLC and Lumos. *Id.* at 6, ¶ 24. To the contrary, the former owners represented, through the terms of the MIPA, that "[n]o third party is entitled to receive any brokerage commissions, finder's fees, fees for financial advisory services or similar compensation in connection with the transactions contemplated hereby based on any arrangement or agreement made by or on behalf of such seller." *Id.*, ¶ 25; Docket No. 17-1 at 19. The agreement further stated that ""[n]o broker, finder or investment banker is entitled to any brokerage, finder's or other fee or commission in connection with the transactions contemplated by this Agreement or any other Transaction Document based upon arrangements made by or on behalf of Sellers." Docket No. 17 at 6, ¶ 26; Docket No. 17-1 at 38.

The MIPA obligated the former owners to maintain the confidentiality of the MIPA. Docket No. 17 at 6-7, ¶ 28; Docket No. 17-1 at 39. Further, as part of the MIPA, the former owners agreed to an indemnification provision stating that they would:

> [S]everally and not jointly in accordance with their respective Ownership Percentages, indemnify and defend each of Buyer and its Affiliates (including the Company) and their respective Representatives (collectively, the "Buyer Indemnitees") against, and shall hold each of them harmless from and against, and shall pay and reimburse each of them for, any and all Losses incurred or sustained by, or imposed upon, the Buyer Indemnitees based upon, arising out of, with respect to or by reason of: (a) any inaccuracy in or breach of any of the representations or warranties of Sellers contained in any Transaction Document.

Docket No. 17 at 7, ¶ 29; Docket No. 17-1 at 46.

Finally, the MIPA contained a provision obligating the indemnifying parties – the former owners – to notify the indemnified parties – McLaughlin and Vac-Tron LLC – of any claims brought by a non-party to the MIPA. Docket No. 17 at 7-10; ¶¶ 31-32; Docket No. 17-1 at 48. These provisions allowed for the indemnifying parties to assume the defense of such a claim, but only if certain conditions were met. Docket No. 17 at 7-10; ¶¶ 31-32; Docket No. 17-1 at 48. These conditions included a requirement that the indemnifying parties agree in writing to be fully responsible for all losses from a claim they defend and a requirement that the indemnified party be given the opportunity to determine whether the indemnified party allowing the indemnifying party to defend the claim would have a material adverse impact on the indemnified party. Docket No. 17 at 7-10; ¶¶ 31-32; Docket No. 17-1 at 48. The indemnification provisions also stated that, in the event the indemnifying party failed to notify the indemnified party of a claim but the indemnified party ultimately defended that claim, then the indemnifying party shall be liable for all losses "based upon, arising from, and relating to" that claim. Docket No. 17 at 9-10; ¶ 32; Docket No. 17-1 at 48.

Vac-Tron LLC did not pay Lumos a transaction fee after McLaughlin acquired Vac-Tron LLC.  Docket No. 17 at 11-12, ¶ 40.  In fact, Lumos was not aware of the sale until several months later, when the president of AMM informed Lumos of the transaction.  *Id.*  Lumos then contacted Republic Financial Corporation ("Republic"), one of the former owners who had sold Vac-Tron LLC, seeking payment of the transaction fee.  *Id.* at 12, ¶ 41.[4]  Republic disputed Lumos's entitlement to a fee.  *Id.*  In October 2019, Lumos, pursuant to the terms of the engagement agreement, filed an arbitration demand against Vac-Tron LLC with the American Arbitration Association.  *Id.*  None of the former owners informed McLaughlin, the new owner of Vac-Tron LLC, of the arbitration demand.  *Id.*, ¶ 42.  Instead, the former owners hired attorneys to appear on behalf of Vac-Tron LLC in the arbitration.  *Id.*  The arbitration proceedings continued without McLaughlin's knowledge until May 21, 2020, when McLaughlin learned of the arbitration through a third-party discovery request sent from Lumos to McLaughlin.  *Id.* at 12-13, ¶¶ 42-45.  On June 6, 2020, McLaughlin provided Republic, as the representative of the former owners, with notice of its claim for indemnification under the MIPA and asserted its right to participate in the defense of the claim against Vac-Tron LLC.  *Id.* at 13, ¶ 49.  While the former owners nominally agreed to McLaughlin's involvement in defending the case, they continued to limit McLaughlin's ability to participate meaningfully in the defense.  *Id.* at 13-15, ¶¶ 50-56.  For example, they failed

---

[4] Lumos contacted Robert Possehl, the principal of Republic.  Docket No. 17 at 12, ¶ 41.  Republic held the controlling stake in Vac-Tron LLC prior to the sale to McLaughlin.  *Id.* at 3, ¶ 12.  Republic acted as the representative of the former owners in the sale of Vac-Tron LLC.  *Id.* at 5-6, ¶ 23.

to ensure that McLaughlin's representatives could attend the confidential arbitration proceedings. *Id.* at 15, ¶ 55.

On November 16, 2020, the arbitrator ruled in favor of Lumos and against Vac-Tron LLC, awarding $971,758.69 in damages, $153,142.77 in pre-judgment interest, $161,107.50 in attorneys' fees, $46,392.16 in costs, and $21,327.50 in arbitration expenses. *Id.* at 15-16, ¶¶ 58-59. Vac-Tron LLC and McLaughlin sent a letter to the former owners requesting indemnification for the award, *id.* at 16, ¶ 62, but the former owners did not agree to cover the award. *Id.* at 17, ¶ 64. McLaughlin and Vac-Tron LLC paid the award to Lumos via wire transfer. *Id.*, ¶ 63.

In the motion for default judgment, the plaintiffs seek damages from AMM of $398,500.03, representing AMM's proportionate share of the judgment. Docket No. 162 at 8, ¶ 26.[5] A affidavit from Ryan Agre, a representative of Vermeer Corporation,[6] explains that, in the MIPA, AMM represented and warranted that no advisors were owed a fee in connection with the acquisition of the target company. Docket No. 162-2 at 2, ¶¶ 4-5; Docket No. 17-1 at 19, 38. The affidavit cites the MIPA's indemnification provision, referenced earlier in this order, which states that AMM agreed to indemnify plaintiffs for a percentage of any losses arising out of any inaccuracy or breach of representations or warranties in the MIPA, with that percentage being equivalent to AMM's prior ownership percentage in Vac-Tron LLC. Docket No. 162-2 at 2-3, ¶ 7;

---

[5] As required by Federal Rule of Civil Procedure 54(c), the request does not exceed the amount demanded in the pleadings. *See* Fed. R. Civ. P. 54(c) ("[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."); Docket No. 17 at 20, ¶ 82 (listing, in the first amended complaint, $398,500.03 in damages associated with AMM).

[6] Vermeer Corporation is the parent company of plaintiffs McLaughlin and Vac-Tron LLC. Docket No. 162-2 at 1, ¶ 2; *see also* Docket No. 17 at 1, ¶¶ 1-2.

Docket No. 17-1 at 46. The "losses" referenced in this provision of the contract are defined as "losses, damages, liabilities, deficiencies, Actions, judgments, interest, awards, penalties, fines, costs or expenses of whatever kind, including any diminution in the value of [Vac-Tron LLC], reasonable attorneys' fees and the cost of enforcing any rights to indemnification hereunder and the cost of pursuing any insurance providers." Docket No. 162-2 at 3, ¶ 8; Docket No. 17-1 at 11. Vac-Tron LLC and McLaughlin paid $1,358,654.39 to satisfy the arbitration award entered in favor of Lumos and against Vac-Tron LLC. Docket No. 162-2 at 4, ¶ 12. Vac-Tron LLC and McLaughlin further incurred $64,540 in attorneys' fees during the arbitration process, for a total of $1,423,194.39 in pre-interest damages. *Id.*, ¶ 13. AMM's ownership percentage in the target company was 28%. *Id.* at 3, ¶ 10; Docket No. 17-1 at 65. While plaintiffs do not make the final step in the calculation explicit, the Court understands plaintiffs to calculate the damages request of $398,500.03 by multiplying the total of $1,423,194.39 by the 28% ownership stake that AMM held in Vac-Tron LLC prior to the transaction.[7]

Based on the information provided in the affidavit, the Court finds the damages at issue here to be capable of mathematical calculation. *See Hunt*, 770 F.2d at 148. The Court therefore finds that a hearing is not required. The Court further finds that plaintiffs, through the complaint and affidavit, have properly supported damages against AMM in the amount of $398,494.43. The Court will therefore award damages in that amount.

---

[7] The Court notes that when it multiplies these two numbers it reaches a total amount of $398,494.43, rather than the $398,500.03 requested by plaintiffs. The Court will, in the absence of any clear explanation for the discrepancy in numbers, award the amount that it has calculated: $398,494.43.

In a footnote at the end of the motion for default judgment, plaintiffs assert an entitlement to pre- and post-judgment interest at a rate of 10%. Docket No. 162 at 10 n.2. Plaintiffs base their interest rate on 6 Del.C § 2301(a). *Id.* That law states that:

> Any lender may charge and collect from a borrower interest at any rate agreed upon in writing not in excess of 5% over the Federal Reserve discount rate including any surcharge thereon. Where there is no expressed contract rate, the legal rate of interest shall be 5% over the Federal Reserve discount rate including any surcharge as of the time from which interest is due; provided, that where the time from which interest is due predates April 18, 1980, the legal rate shall remain as it was at such time. Except as otherwise provided in this Code, any judgment entered on agreements governed by this subsection, whether the contract rate is expressed or not, shall, from the date of the judgment, bear post-judgment interest of 5% over the Federal Reserve discount rate including any surcharge thereon or the contract rate, whichever is less.

6 Del.C § 2301(a). While the first sentence references a "lender," Delaware courts have held that this law governs pre- and post-judgment interest. *See, e.g.*, *Noranda Aluminum Holding Corp. v. XL Ins. Am., Inc.*, 269 A.3d 974, 978-80 (Del. 2021).

The Court has identified several issues that plaintiffs will need to address before the Court authorizes an award of pre-judgment interest. Based on these deficiencies, the Court will deny plaintiffs' request for pre- and post-judgment interest. The Court will, however, provide plaintiffs with the opportunity to file a renewed motion seeking an award of pre- and post-judgment interest. In the renewed motion, plaintiffs should address the following four issues.

First, plaintiffs should confirm whether they still seek an award of pre-judgment interest. Although the complaint and the motion for default judgment both include a request for pre-judgment interest, *see* Docket No. 17 at 35; Docket No. 162 at 10 n.2, the proposed form of judgment submitted as an attachment to the motion for default

judgment does not include an award of pre-judgment interest.  *See* Docket No. 162-3 at
2.

Second, if plaintiffs are seeking pre-judgment interest, they should confirm that
there is no contractual provision in the MIPA addressing the appropriate rate of pre-
judgment interest, as 6 Del.C § 2301(a)'s interest rate formula applies only when there
is "no expressed contact rate."  The Court has reviewed the MIPA and has not identified
any provision addressing pre-judgment interest or the applicable rate; however, much of
the MIPA is redacted.  *See* Docket No. 17-1.

Third, if plaintiffs are seeking pre-judgment interest, they should identify what
they believe is the appropriate interest rate and why.  The motion for default judgment
states that, "[a]s of the filing of this motion, the Federal Reserve discount rate is 5%.
Accordingly, Plaintiffs are entitled to 10% pre- and post-judgment interest."  Docket No.
162 at 10 n.2.  This position appears to be inconsistent with both the plain language of 6
Del.C § 2301(a), which contemplates using the discount rate "as of the time from which
interest is due," and Delaware case law.  *See TranSched Sys. Ltd. v. Versyss Transit
Sols., LLC*, 2012 WL 1415466, at *5 (Del. Super. Ct. Mar. 29, 2012) ("When determining
when a period for pre-judgment interest should begin, the Court asks when the plaintiff
first suffered a loss at the hands of the defendant.").  The question of the applicable rate
is particularly important given that, assuming plaintiffs calculate their injury as occurring
at or around the time of the arbitration award in November 2020, the Federal Reserve
discount rate was nearly 0%, not 5%.  *See Federal Reserve Bank of St. Louis*, Federal
Funds Effective Rate, https://fred.stlouisfed.org/graph/?g=jafQ.  Relatedly, plaintiffs
should identify the date on which pre-judgment interest should begin to accrue, such the

days after the date of the arbitration award, the date plaintiffs paid the arbitration award, the date that the former owners were contractually obligated to indemnify plaintiffs for that award, or some other date.

Fourth, plaintiffs should identify whether they believe the interest should be calculated to accrue on a simple or compound basis. *See Moose Agric. LLC v. Layn USA, Inc.*, 639 F. Supp. 3d 1150, 1156 (D. Colo. 2022) (discussing Delaware law on the issue of the applicable interest rate calculation).

The Court will order plaintiffs to file a motion, not to exceed five pages, addressing these issues.

### 3. Attorneys' Fees

In addition to damages, the plaintiffs seek attorneys' fees and costs in the amount of $461,388.50. Docket No. 162 at 8, ¶ 26. Pursuant to the Local Rules, motion for attorney's fees must "be supported by affidavit." D.C.COLO.LCivR 54.3(a). Moreover, the motion "shall include the following for each person for whom fees are claimed: (1) a summary of relevant qualifications and experience; and (2) a detailed description of the services rendered, the amount of time spent, the hourly rate charged, and the total amount claimed." D.C.COLO.LCivR 54.3(b).

The Court finds that plaintiffs have submitted much of the information required. *See generally* Docket No. 162-1. However, the Court finds that plaintiffs have failed to explain whether the hourly rate charged is comparable to "the prevailing market rate in the relevant community." *See Guides, Ltd. v. Yarmouth Group Property Management, Inc.*, 295 F.3d 1065, 1078 (10th Cir. 2002). "The applicable hourly rate is the rate that is reasonable in the area where the litigation occurs, even for the fees of out of state lawyers." *Student Mktg. Grp., Inc. v. Coll. P'ship, Inc.*, No. 04-cv-01258-LTB-BNB, 2005

WL 8171423, at *2 (D. Colo. Dec. 28, 2005), *amended*, 2006 WL 8454015 (D. Colo.

Apr. 3, 2006), *and aff'd*, 247 F. App'x 90 (10th Cir. 2007).  Plaintiffs, however, state only

that "Faegre Drinker's rates for attorneys and paraprofessionals are comparable to the

hourly rates of similarly situated legal professionals at comparable firms in the locations

where Faegre Drinker's attorneys and paraprofessionals practice."  Docket No. 162-1 at

3, ¶ 10.  Plaintiffs must address the reasonableness of their rates based on the

prevailing rates in Denver, Colorado.

The Court also notes that the requested fee amounts appear to include

significant monthly expenses associated with litigation-support technology.  *See, e.g.*,

Docket No. 162-1 at 91 (listing $5,006.40 in monthly expenses for "eDiscovery

Processing Services Tritura LLC For services").  The motion for attorneys' fees should

address both the necessity of these services and the reasonableness of the rates.  *Cf.*

*Grynberg v. Ivanhoe Energy, Inc.*, No. 08-cv-02528-WDM-BNB, 2011 WL 3294351, at

*10 (D. Colo. Aug. 1, 2011) ("With specific regard to the claim for computerized legal

research costs, Defendants must demonstrate: (1) the client was billed for computerized

legal research expenses separate from attorney fees; (2) the computerized legal

research was necessary for trial preparation; and (3) the requested costs were

reasonable.") (internal quotation and citation omitted).  For these deficiencies, the Court

will deny the portion of the motion for default judgment that requests attorneys' fees.

Plaintiffs may file a renewed motion for attorneys' fees within thirty days of the issuance

of this order.

### C. <u>AMM's Motion to Dismiss</u>

On November 15, 2024, AMM filed a document that it captioned as both a

"Response to the Court's Minute Order" and a "Motion to Dismiss Due to the Egregious

Deception by the Plaintiffs." Docket No. 167 at 1. This filing came shortly after the Court issued a minute order explaining that AMM, as a corporate entity, must be represented by counsel. *See* Docket No. 166 at 1-2. As AMM filed this motion to dismiss "pro se," the Court will deny the motion since AMM must be represented by counsel.

## IV. CONCLUSION

It is therefore

**ORDERED** that Plaintiffs' Renewed Motion for Default Judgment [Docket No. 162] is **GRANTED in part** and **DENIED in part**. It is further

**ORDERED** that defendant American Manufacturing & Machine, Inc. shall be liable to McLauglin Group, Inc. and Vac-Tron Equipment, LLC in the amount of $398,494.43. It is further

**ORDERED** that plaintiffs may file a motion for pre- and post-judgment interest on or before **October 14, 2025**. It is further

**ORDERED** that the plaintiffs may file a motion for attorneys' fees on or before **October 14, 2025**. It is further

**ORDERED** that American Manufacturing & Machine, Inc.'s Motion to Dismiss Due to Egregious Deception by the Plaintiffs [Docket No. 167] is **DENIED**.

DATED September 11, 2025.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge