\IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 20-cv-03531-PAB-TPO

MCLAUGHLIN GROUP, INC., a South Carolina Corporation, and
VAC-TRON EQUIPMENT, LLC, a Delaware limited liability company

Plaintiffs,

v.

AMERICAN MANUFACTURING & MACHINE, INC., a Florida corporation,

Defendant.

---

**ORDER**

---

This matter comes before the Court on Plaintiffs' Motion for Attorneys' Fees and Costs [Docket No. 171] and Plaintiffs' Motion for Pre-Judgment and Post-Judgment Interest [Docket No. 172]. The Court has jurisdiction pursuant to 28 U.S.C. § 1332.

## I. BACKGROUND

This case has a lengthy procedural history. The Court recounted the key portions of that history in its August 16, 2024 order. *See* Docket No. 161 at 1-2. The Court will only repeat that history as it is relevant to plaintiffs' motions.

Plaintiffs asked the Court to enter default judgment against American Manufacturing & Machine, Inc. ("AMM") pursuant to Federal Rules of Civil Procedure 16 and 37. Docket No. 156 at 5, ¶ 17. The Court found that default judgment was an appropriate sanction for AMM's failure to obtain counsel in violation of a Court order, Docket No. 161 at 8, but denied the motion for default judgment because the plaintiffs failed to argue that they were entitled to default judgment based on the facts alleged in

the complaint. *Id.* at 8-9. Plaintiffs subsequently filed a renewed motion for default judgment. Docket No. 162.

On September 11, 2025, the Court granted in part and denied in part plaintiffs' renewed motion for default judgment. Docket No. 170. The Court found that AMM was liable to plaintiffs in the amount of $398,494.43 for breach of contract, namely, for breach of a member interest purchase agreement ("MIPA"). *See id.* at 2, 17. The Court allowed plaintiffs to file motions for attorneys' fees and for pre- and post-judgment interest. *Id.*

## II. ANALYSIS

### A. Pre- and Post-Judgment Interest

As noted in the Court's September 11, 2025 order, plaintiffs seek pre- and post-judgment interest pursuant to 6 Del.C § 2301(a). *See* Docket No. 170 at 13; Docket No. 172 at 2, ¶ 4. That law states that:

> Any lender may charge and collect from a borrower interest at any rate agreed upon in writing not in excess of 5% over the Federal Reserve discount rate including any surcharge thereon. Where there is no expressed contract rate, the legal rate of interest shall be 5% over the Federal Reserve discount rate including any surcharge as of the time from which interest is due; provided, that where the time from which interest is due predates April 18, 1980, the legal rate shall remain as it was at such time. Except as otherwise provided in this Code, any judgment entered on agreements governed by this subsection, whether the contract rate is expressed or not, shall, from the date of the judgment, bear post-judgment interest of 5% over the Federal Reserve discount rate including any surcharge thereon or the contract rate, whichever is less.

6 Del.C § 2301(a). While the first sentence references a "lender," Delaware courts have held that this law governs pre- and post-judgment interest. *See, e.g.*, *Noranda Aluminum Holding Corp. v. XL Ins. Am., Inc.*, 269 A.3d 974, 978-80 (Del. 2021). In the September 11, 2025 order, the Court identified several deficiencies in plaintiffs' request

for pre- and post-judgment interest, *see* Docket No. 170 at 13-15, that plaintiffs have addressed in their motion for pre- and post-judgment interest.

The Court asked plaintiffs to confirm whether they still seek an award of pre-judgment interest and, if they are, to confirm that there is no contractual provision in the MIPA addressing the appropriate rate of pre-judgment interest. *Id.* at 13-14. Section 2301(a)'s interest rate formula applies only where there is no "expressed contract rate." *Id.* at 14. Plaintiffs "confirm that they are seeking pre-judgment (and post-judgment) interest and that the MIPA does not contain a contractual interest rate." Docket No. 172 at 2, ¶ 3.

The Court asked plaintiffs to identify what they believe is the appropriate interest rate and why. Docket No. 170 at 14. While plaintiffs contended that they are entitled to 10% pre- and post-judgment interest, the Court noted that this appears to be inconsistent with Delaware case law and the plain language of § 2301(a), which contemplates using the discount rate "as of the time from which interest is due." *Id.* (citation omitted). The Court also asked plaintiffs to identify the date on which pre-judgment interest should begin to accrue. *Id.*

Plaintiffs state that they are entitled to pre-judgment interest beginning on November 16, 2020 until the Court's September 11, 2025 order. Docket No. 172 at 3, ¶ 11. November 16, 2020 is the date of the arbitration award that resulted in an award of damages to be paid by plaintiffs and for which AMM was required to indemnify. *See* Docket No. 170 at 11. "When determining when a period for pre-judgment interest should begin, the Court asks when the plaintiff first suffered a loss at the hands of the defendant." *TranSched Sys. Ltd. v. Versyss Transit Sols., LLC*, 2012 WL 1415466, at

*5 (Del. Super. Ct. Mar. 29, 2012). The Court agrees that November 16, 2020 is the date on which pre-judgment interest began to accrue. On this date, the Federal Reserve Discount Rate was 0.25%. *See Federal Reserve Bank of St. Louis*, Federal Funds Effective Rate, https://fred.stlouisfed.org/graph/?g=jafQ. Pursuant to § 2301(a), the interest rate is 5% over the Federal Reserve Discount Rate. *See* 6 Del.C § 2301(a). Thus, the Court finds that plaintiffs are entitled to a pre-judgment interest rate of 5.25%.

Finally, the Court asked plaintiffs to identify whether they believe the interest should accrue on a simple or compound basis. Docket No. 170 at 15. Plaintiffs state that pre-judgment interest should be calculated on a compound basis because sophisticated commercial entities were involved in the contract at issue. Docket No. 172 at 3-4, ¶ 12. While the Court agrees that the sophistication of the parties may weigh in favor of awarding compound interest, the Court finds that this alone does not justify compound interest. "[A]ny Delaware court that does exercise authority to grant compounding interest, must look at: (1) the parties' sophistication; (2) the nature of any breaches; (3) the economic realities of the market; (4) the economic realities of the parties; and, (5) the fairness of compounding." *River Valley Ingredients, LLC v. Am. Proteins, Inc.*, 2025 WL 3094942, at *20 n.197 (Del. Super. Ct. Nov. 5, 2025); *see also Moose Agric. LLC v. Layn USA, Inc.*, 639 F. Supp. 3d 1150, 1156 (D. Colo. 2022) ("Delaware courts consider equitable principles – such as the financial sophistication of the parties involved, the impact of the deprivation on plaintiff, and the need for defendant to disgorge inequitably obtained profits –when deciding whether to award compound interest."). In *River Valley*, the court "readily deem[ed] the[] parties 'sophisticated' and note[d] that today's market tends to compound interest." *See River*

*Valley*, 2025 WL 3094942, at *20 n.197. Nevertheless, the court found that there was "no real evidence presented supporting the granting of compound interest." *Id. River Valley* noted that the party moving for compound interest "made no claim that awarding simple interest would deprive it of any benefit that it's entitled to" and, "[w]ithout a more-developed record on this issue, it's not in the interest of justice to compound interest." *Id.* Here, plaintiffs have failed to address other factors, beyond the sophistication of the parties, that support compound interest. Accordingly, the Court will calculate the pre-judgment rate on a simple basis.

Based on the foregoing, the Court finds that plaintiffs are entitled to pre-judgment interest at a rate of 5.25%, calculated on a simple basis, beginning on November 16, 2020 and ending on September 11, 2025.

The Court finds that plaintiffs are entitled to post-judgment interest pursuant to 28 U.S.C. § 1961. *See N. Star Sci. Sols., LLC v. Michigan Health Clinics*, No. 24-cv-00541-GPG-STV, 2025 WL 902427, at *6 (D. Colo. Feb. 25, 2025), *report and recommendation adopted*, 2025 WL 1251222 (D. Colo. Mar. 27, 2025) ("post-judgment interest . . . is mandatory under 28 U.S.C. § 1961."). "Post-judgment interest is due on the entire amount of the award, including both damages and prejudgment interest thereon." *BMO Bank N.A. v. Radiometrics Corp.*, No. 25-cv-00265-REB-KAS, 2025 WL 2605086, at *2 (D. Colo. July 10, 2025). The post-judgment interest rate shall be calculated pursuant to § 1961.

### B. <u>Attorneys' Fees and Costs</u>

Plaintiffs are entitled to attorneys' fees and costs pursuant to the MIPA. *See* Docket No. 162-1 at 2, ¶ 5; *see also Donald M. Durkin Contracting, Inc. v. City of Newark*, 2008 WL 952984, at *5 (D. Del. Apr. 9, 2008) ("Delaware follows the American

Rule, under which prevailing litigants are responsible for their own attorneys' fees, unless otherwise provided by contract or statute.").

To determine a reasonable fee request, a court must begin by calculating the "lodestar amount." *Robinson v. City of Edmond*, 160 F.3d 1275, 1281 (10th Cir. 1998). The lodestar amount is the "number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). A party seeking an award of attorney's fees must establish the reasonableness of each dollar and each hour for which the party seeks an award. *Jane L. v. Bangerter*, 61 F.3d 1505, 1510 (10th Cir. 1995).

Between November 20, 2020 and November 30, 2021, after calculating AMM's share for plaintiffs' incurred attorneys' fees and costs, which is 28%, attorneys' fees and costs total $146,366.93.[1] Docket No. 162-1 at 2-3, ¶ 9. Since December 1, 2021, plaintiffs have incurred $221,034.70 in attorneys' fees and $93,993.31 in costs. *Id.* Thus, plaintiffs are requesting a lodestar amount of $351,652.60 in attorneys' fees and $109,742.34 in costs.

The Court found in its September 11, 2025 order that plaintiff have "submitted much of the information required," but "failed to explain whether the hourly rate charged is comparable to 'the prevailing market rate in the relevant community.'" Docket No. 170 at 15 (quoting *Guides, Ltd. v. Yarmouth Group Property Management, Inc.*, 295

[1] Plaintiffs assert that AMM is "responsible for 28% of these fees and costs totaling $146,360.49 before interest." Docket No. 162-1 at 2-3, ¶ 9. Adding $466,492.50 in fees and $56,246.52 in costs between November 20, 2020 and November 30, 2021 results in a sum of $522,739.02. Twenty-eight percent of $522,739.02 is $146,366.93, not $146,360.49. The Court will use the corrected figure.

F.3d 1065, 1078 (10th Cir. 2002)). The Court ordered plaintiffs to address the reasonableness of the requested hourly rates. *Id.* at 16.

### ***1. Hourly Rate***

A "reasonable rate" is defined as the prevailing market rate in the relevant community for an attorney of similar experience. *Guides, Ltd.*, 295 F.3d at 1078; *Malloy v. Monahan*, 73 F.3d 1012, 1018 (10th Cir. 1996). The party requesting fees bears "the burden of showing that the requested rates are in line with those prevailing in the community." *Ellis v. Univ. of Kan. Med. Ctr.*, 163 F.3d 1186, 1203 (10th Cir. 1998). "Unless the subject of the litigation is 'so unusual or requires such special skills' that only an out-of-state attorney possesses, 'the fee rates of the local area should be applied even when the lawyers seeking fees are from another area.'" *Lippoldt v. Cole*, 468 F.3d 1204, 1225 (10th Cir. 2006) (quoting *Ramos v. Lamm*, 713 F.2d 546, 555 (10th Cir. 1983), *overruled on other grounds by Pa. v. Del. Valley Citizens' Council for Clean Air*, 483 U.S. 711, 721 n.4 (1987)). In order to satisfy his burden, plaintiff must produce "satisfactory evidence – in addition to the attorney's own affidavits – that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience[,] and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984).

Plaintiffs seek the following hourly rates for Colby A. Kingsbury: $715 in 2020; $755 in 2021; $820 in 2022; $920 in 2023; and $1,015 in 2024. Docket No. 171 at 3, ¶ 8. Mr. Kingsbury is a partner at the law firm Faegre Drinker with 25 years of experience. *Id.* Plaintiffs seek hourly rates for Mike Gustafson and James M. Pfau, who are "partners and/or senior counsel at Faegre Drinker," that "do not exceed $830 in any year for which fees are sought." *Id.* For associates at Faegre Drinker, plaintiffs

seek the following hourly rates: $530-$620 in 2020; $435-$585 in 2021; $485-$680 in 2022; $715 in 2023; and $660-$770 in 2024. *Id.*, ¶ 9. Finally, plaintiffs seek hourly rates that range from $245 to $395 between 2020 and 2024 for paraprofessionals. *Id.*, ¶ 10.

In *Pro Polish, LLC v. Abkarian*, No. 23-cv-02470-NYW-SBP, 2024 WL 4661385, at *8 (D. Colo. Oct. 16, 2024), the court summarized the average hourly rates in the Denver area, based on publications by the National Law Journal, as follows:

> The National Law Journal also publishes an Annual Survey of Law Firm Economics ("NLJ Survey"). The 50th NLJ Survey indicates that for the Western/Mountain region of the United States, the average 2022 billable hourly rate was $727 for an equity partner; $680 for non-equity partner; and $507 for an associate, with 75th percentile hourly rates of $883, $850, and $640, respectively. The hourly billing rate for an equity partner at the 90th percentile was $1090. The 47th NLJ Survey for 2019 billing rates provides granularity not available in the 50th NLJ Survey. For Colorado, the average hourly billable rate for a partner was $456, with a 75th percentile hourly rate of $495.

(footnote and citations omitted). Although the partner hourly rates proposed by plaintiffs are on the higher side of these ranges, they are in line with those prevailing rates in the Denver area, particularly in light of the increase in hourly rates since 2022. *See Interstate Restoration, LLC v. Marriott Int'l, Inc.*, No. 21-cv-01380-NYW-JPO, 2024 WL 4661345, at *7 (D. Colo. Oct. 31, 2024) (explaining that median hourly rates have experienced "an approximately 13.5% increase between 2020 and 2021, and another 8% increase between 2021 and 2022"). Mr. Kingsbury declares that "the attorney fees and costs incurred by Plaintiffs in this matter are reasonable considering the extensive motion practice, discovery, and settlement negotiations involving multiple parties over several years in this litigation." Docket No. 162-1 at 4, ¶ 13.

However, the Court finds that the associate hourly rates for 2023 and 2024 proposed by plaintiffs are excessive. For 2023, associates billed $715 per hour and, in 2024, they billed up to $770 per hour. Docket No. 171 at 3, ¶ 9. Not only are these rates above the 75th percentile range reported in the NLJ Survey, but plaintiffs fail to explain what experience and credentials these associates have that would justify these high rates. Plaintiffs state that associates Ehren M. Fournier and Scott E. Wardell were billing at these rates in 2023 and 2024. *Id.* at 3, ¶ 9 n.5-6. Mr. Fournier has been licensed since 2013; however, plaintiffs fail to provide any additional facts about his experience. *See* Docket No. 162-1 at 6. Mr. Wardell has only been licensed since 2021. *See id.* Accordingly, the Court finds that the hourly rates for the associates should not exceed $660.

Furthermore, the Court finds that the hourly rate for the paraprofessionals should not exceed $300. *See Murphy v. Schaible, Russo & Co., L.L.P.,* 722 F. Supp. 3d 1191, 1197 (D. Colo. 2024) (finding hourly rates of $270 to $310 for paraprofessionals to be "exceptionally high"). While plaintiffs state that hourly rates for paraprofessionals that range from "$245 to $395 between 2020 and 2024" are "within a reasonable range of prior awards for paraprofessionals based on the prevailing rates in Denver, Colorado," Docket No. 171 at 3, ¶ 10, plaintiffs' cited authority does not support that proposition. In *Interstate*, 2024 WL 4661345, at *7, the court found "that the rate of $270 to $330 per hour for [paralegal] is not consistent with the prevailing rates for paralegals in the Colorado legal community." While the Court recognizes that *Interstate* approved a paraprofessional hourly rate of $250 per hour, the Court finds that an hourly rate not to exceed $300 for the paraprofessionals in this case is more appropriate given the

extensive procedural history and complexity of this case, and the fact that each of the paraprofessionals staffed on this case had 10-20 years of experience. *See* Docket No. 162-1 at 6.Number of Hours

In determining the reasonableness of the hours expended, a court considers several factors. First, it considers whether the fees pertain to tasks that would ordinarily be billed to a client. *See Ramos*, 713 F.2d at 554. The party seeking fees must demonstrate that its counsel used "billing judgment" in winnowing down the hours actually spent to those reasonably expended. *Praseuth v. Rubbermaid, Inc.*, 406 F.3d 1245, 1257 (10th Cir. 2005). If not, a court should take extra care to ensure that an attorney has not included unjustified charges in his billing statement. *Id*. A court should also consider whether the amount of time spent on a particular task appears reasonable in light of (1) the complexity of the case; (2) the number of reasonable strategies pursued; (3) the responses necessitated by the maneuvering of the other side; and (4) "the potential duplication of services" caused by the presence of multiple attorneys when one would suffice. *Ramos*, 713 F.2d at 554. Ultimately, the court's goal is to fix a fee that would be equivalent to what the attorney would reasonably bill for those same services in an open market. *Id*. at 555. Fees will be denied for excessive, redundant, and otherwise unnecessary expenses. *Id*. at 553. The burden is on the party requesting fees to prove that its counsel exercised proper billing judgment. *Case v. Unified Sch. Dist. No. 233, Johnson Cnty., Kan.*, 157 F.3d 1243, 1250 (10th Cir. 1998) ("Counsel for the party claiming the fees has the burden of proving hours to the district court by submitting meticulous, contemporaneous time records that reveal, for each

lawyer for whom fees are sought, all hours for which compensation is requested and how those hours were allotted to specific tasks.").

The Court finds that the number of hours expended by plaintiffs' counsel is reasonable. As explained above, this case has a lengthy procedural history, *see* Docket No. 161 at 1-2, that began in November 2020 and included the litigation of counterclaims, settlement discussions, extensive discovery, the withdrawal of AMM's counsel and failure to retain new counsel, and subsequent default judgment proceedings. The Court finds that the billing records do not contain redundant or unnecessary expenses and that the number of hours spent on each task appears reasonable in light of the complexities of this case.

### C. Lodestar Amount

As discussed above, plaintiffs propose a lodestar amount of $351,652.60. *See* Docket No. 162-1 at 2-3, ¶ 9. Because the Court finds that a reduction in the associates' hourly rates for 2023 and 2024 and paraprofessionals' rates is warranted, the Court will adjust the lodestar amount accordingly.

Plaintiffs submit 143 pages of billing records that do not readily identify the hourly rate at which each timekeeper is billing. *See* Docket No. 162-1 at 7-150. Furthermore, plaintiffs do not provide granular detail about each timekeeper in violation of the Local Rules. Pursuant to the Local Rules, a motion for attorneys' fees "for *each person* for whom fees are claimed" shall provide "the amount of time spent, the hourly rate charged, and the total amount claimed." D.C.COLO.LCivR 54.3(b) (emphasis added). Here, plaintiffs provide ranges at which associates and paraprofessionals billed without identifying the specific timekeeper and the specific rate at which he or she billed. *See*

Docket No. 171 at 3, ¶¶ 9-10 n.2-7. Plaintiffs also do not provide the total hours or amount claimed for each timekeeper.

"There is no precise rule or formula for a court's adjustment of the lodestar; rather, courts have discretion in making this equitable judgment." *Ortega v. New Mexico Legal Aid, Inc.*, 2019 WL 11585163, at *1 (D.N.M. Oct. 24, 2019) (*Hensley*, 461 U.S. at 436-37). To account for the excessive hourly rates identified above and the deficiencies in the provided billing records, the Court finds that a 10% reduction of the lodestar amount is warranted. *See Auraria Student Hous. at the Regency, LLC v. Campus Vill. Apartments, LLC*, No. 10-cv-2516-WJM-KLM, 2016 WL 8458776, at *7 (D. Colo. Aug. 5, 2016), *vacated on other grounds*, 2017 WL 345664 (D. Colo. Jan. 24, 2017) ("The Court will exercise its discretion to reduce the overall award of attorneys fees by 7.5% . . ., on account of the concerns described above with Plaintiff's documentation and showing that all the hours billed were in fact reasonably expended"); *Republican Party of New Mexico v. Balderas*, 2020 WL 12517246, at *7 (D.N.M. Sept. 10, 2020) (noting that, in light of the "voluminous billing record submitted by Plaintiffs [that] is neither user friendly nor detailed enough to allow this Court to calculate the lodestar sum," a percentage reduction may be warranted). Accordingly, the Court finds that the proper lodestar amount is $316,487.34.

**D. <u>Costs</u>**

In the September 11, 2025 order, the Court noted that "the requested fee amounts appear to include significant monthly expenses associated with litigation-support technology" and that plaintiffs "should address both the necessity of these services and the reasonableness of the rates." Docket No. 170 at 16. Plaintiffs state that "the monthly expenses associated with litigation-support technology in Plaintiffs'

attorneys' invoices were necessary to create and maintain a litigation database for ediscovery data over a period of nearly five years" and that "[t]his is a document-heavy case involving multiple parties, a prior arbitration proceeding, and based on actions taken by sophisticated parties over multiple years." Docket No. 171 at 4, ¶ 11.

The Court finds that plaintiffs can recover e-discovery costs. The Court agrees that "it has become impracticable to litigate a complex, document-intensive case like this one without making extensive use of an electronic database." *AECOM Tech. Servs., Inc. v. Flatiron | AECOM, LLC,* No. 19-cv-2811-WJM-KAS, 2025 WL 775559, at *5 (D. Colo. Mar. 11, 2025). Given the length of this litigation and the need to efficiently store a significant number of documents, the Court finds that such costs are reasonable. *See id.* (permitting the prevailing party to recover $984,980.48 in e-discovery costs). Accordingly, the Court finds that a costs award of $109,742.34 is reasonable.

## III. CONCLUSION

It is therefore,

**ORDERED** that Plaintiffs' Motion for Attorneys' Fees and Costs [Docket No. 171] is **GRANTED in part**. It is further

**ORDERED** that Plaintiffs' Motion for Pre-Judgment and Post-Judgment Interest [Docket No. 172] is **GRANTED in part**. It is further

**ORDERED** that, in accordance with the Court's Order, Docket No. 170 at 17, judgment shall enter in favor of plaintiffs and against American Manufacturing & Machine, Inc. in the amount of **$398,494.43**. It is further

**ORDERED** that pre-judgment interest shall accrue at a rate 5.25%, calculated on a simple basis, beginning on November 16, 2020 and ending on September 11, 2025. It is further

**ORDERED** that post-judgment interest shall accrue pursuant to 28 U.S.C. § 1961. It is further

**ORDERED** that American Manufacturing & Machine, Inc. shall pay plaintiffs' attorneys' fees in the amount of **$316,487.34** and costs in the amount of **$109,742.34.** It is further

**ORDERED** that this case is closed.

DATED August 17, 2026.

BY THE COURT:

s/ Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge